# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
2008 FEB 15 PM 1:53
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of

10321 Camino Ruiz Apartment 18
San Diego, California, 92126

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: '08 MJ 0446

I *Jason Dunham* *being duly sworn depose and say:*

*I am a* *Special Agent with the Immigration and Customs Enforcement (ICE)* *and have reason to believe that* ___ *on the person of or* _X_ *on the property or premises known as*

***SEE ATTACHMENT A***

*in the Southern District of California, there is now concealed a certain person or property, namely*

***SEE ATTACHMENT B***

*which is evidence, fruits of crime, property designed for use or used in committing criminal offenses including violations of Title 18, United States Code, Section 514. The facts to support a finding of Probable Cause are as follows:*

***SEE ATTACHED AFFIDAVIT - Continued on the attached sheet and made a part hereof.***

*Signature of Affiant*

*Sworn to before me, and subscribed in my presence*

FEB 15 2008 10:10 AM *at* *San Diego, California*
*Date/Time issued*

*Anthony J Battaglia*
*United States Magistrate Judge*
*Name and Title of Judicial Officer*

*Signature of Judicial Officer*

# AFFIDAVIT

I, Jason Dunham, being duly sworn, do hereby depose and say:

## I. INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE) and have been so employed since July 2004. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator's Training Program and the Immigration and Customs Enforcement Special Agent Training (ICESAT), in Glynco, Georgia. While attending FLETC, I received extensive training related to federal criminal procedures and investigative techniques. I am currently assigned to the ICE Financial Task Force, a multi-agency task force comprised of ICE, IRS, Office of Foreign Asset Control (OFAC), California Bureau of Narcotics Enforcement (BNE) and Chula Vista Police Department. I have received advanced training in Bulk Cash Smuggling and Money Laundering methods and techniques.

2. During the course of my employment with ICE, I have gained experience and received training with respect to conducting investigations of criminal and civil violations of Titles 8, 18, 19, 21, and 31 of the United States Code, and various other federal statutes. I have conducted investigations

involving the smuggling of items into the United States, money laundering, bulk cash smuggling, and other financial crimes. During the investigation of these cases, I have participated in the execution of search and arrest warrants and have seized evidence of violations of United States law.

II. PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of applications for the following:

a. A search warrant for the SUBJECT PREMISES described in paragraph 6 below for the items to be seized described in paragraph 7 below, which are evidence of violations of Title 18, United States Code, Section 514 (Fictitious Obligations).

4. On February 14, 2008, I spoke to ICE SA Nickolaus Jones from the Office of the Assistant Special Agent In Charge, Los Angeles International Airport. SA Jones informed me of the details of an investigation involving fictitious obligations, and specifically provided me with the information described below in paragraph 12 through 47. SA Jones told me that he knew this information through his training and experience, personal involvement in this investigation, discussions with other law enforcement officers, and review of reports and other documents prepared by law enforcement officers.

5. Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause for the issuance of the above-listed arrest and search warrants, I have not described all of the relevant facts and circumstances of which I am aware. In addition, when I rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated. Facts not stated in this affidavit are not being relied upon to reach my conclusion that the requested warrants should be issued.

## III. PREMISES TO BE SEARCHED

6. 10321 Camino Ruiz, Apartment 18, San Diego, California,92126, ("THE SUBJECT PREMISES.") The Subject Premises is a residential apartment located in an apartment building at 10321 Camino Ruiz, San Diego, California. The apartment building is located on the West side of Camino Ruiz. The apartment building is the second building South of the intersection of Camino Ruiz and Gold Coast Drive. The exterior of the apartment building is white stucco with a red and orange ceramic tile roof. The apartment building is a two-story building. The numbers "10321" appear on the East side of the building. Apartment 18 is further described as being located on the second floor of the building in the South West corner of the building. The front door to apartment 18 is located on the West

side of the apartment facing West. Immediately North of the front door on the same wall is a window for apartment 18. The numbers "18" appear next to the front door of apartment 18.

IV. ITEMS TO BE SEIZED

7. The items to be seized are evidence of violations of Title 18, United States Code, Section 514, regarding fictitious obligations, specifically:

a. Any and all fictitious obligations, to include those securities alleging to be "Federal Reserve Notes" in denominations exceeding $100,000, and copies or partial copies of the same;

b. Telephone records, including records of outgoing and incoming calls;

c. Photographs depicting fictitious instruments or depicting GAZA or HOFFMANN; and

d. Any and all records, correspondence, address books, agreements, documents or materials relating to the passing, uttering, offering, brokering, or selling of fictitious obligations.

e. As used above, the terms records, correspondence, address books, agreements, documents or materials include records, correspondence, address books, agreements, documents or materials created, modified or stored in any form.

f. Searching for computerized information for evidence or instrumentalities of crime commonly requires agents to seize all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment because:

i. The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (I/O) devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it operated at the time of the seizure in order to accurately retrieve the evidence listed in this affidavit. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers), as well as all related instruction manuals or other documentation and data security devices. If the analyst determines that the I/O devices, software, documentation, data security devices are not necessary to retrieve and preserve the data after inspection, the government will return them in a reasonable time.

ii. In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage

devices as well as central processing units (CPUs). Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

iii. In addition, there is probable cause in this matter to believe that the computers and associated storage devices, monitors, keyboards, modems and other peripherals including scanners and printers located at 10321 Camino Ruiz, Apartment 18, San Diego, California, 92126, are all being used as instrumentalities of the crime of Fraud and Related Activity in Connection with Identification Documents and Information and Fraud and Misuse of Visas, Permits and other Documents in violation of law, and should all be seized as such.

iv. Based upon the foregoing paragraphs, judicial authority is specifically requested to search the premises located at 10321 Camino Ruiz, Apartment 18, San Diego, California, 92126 and seize the computer equipment, associated storage devices, monitors, keyboards, modems and other peripherals including scanners and printers, and other evidence, and to permit the search of all seized computer equipment, and associated devices that may store data by a qualified computer expert in a laboratory or other controlled environment.

V. SUMMARY OF PROBABLE CAUSE

8. As set forth in detail below, other agents of ICE, have been investigating GAZA, HOFFMANN, and JOHNSON and have learned that they are involved in a scheme or schemes to sell and possess with the intent to sell fictitious, large-denomination Federal Reserve Notes, or FRNs. Specifically, an ICE Agent acting in an undercover capacity, have had numerous telephonic and email communications with GAZA and HOFFMANN. From these communications, it has become known that HOFFMANN and JOHNSON are each in possession of various documents purporting to be large-denomination FRNs that they wish to sell. In communications with GAZA, GAZA made it known that he would act as a broker for HOFFMANN and/or JOHNSON for the sale of these notes. HOFFMANN's notes are purportedly in Switzerland, and there have been communications with both HOFFMANN and GAZA regarding ways to smuggle these notes into the United States. JOHNSON's notes are purportedly in Los Angeles, California. Because the described denominations of these notes are larger than any notes ever issued by the U.S. Treasury, I believe the notes to be fraudulent.

VI. TRAINING AND EXPERIENCE

9. Based on my training and experience and my conversations with other law enforcement officers I know that the largest genuine U.S. Federal Reserve Note ever printed was a

$100,000 note, and that the largest denomination of U.S. currency ever printed was also $100,000. I also know that genuine one million and one billion dollar Federal Reserve Notes have never existed. Therefore, any documents that purport to be one million or one billion dollar Federal Reserve Notes are in fact fictitious. I know that individuals who attempt to sell such fictitious financial instruments often refer to them as "FRNs."

10. Based on my training and experience I know that individuals who engage in the selling, offering, or brokering of fictitious financial instruments keep records regarding the financial instruments and attempted transactions. Based on my training and experience I also know that such individuals often use electronic mail (email) to communicate regarding attempted transactions.

11. Based upon discussions with other investigators and my own experience with the search of computers and retrieval of data from computer systems, I know that searching and seizing information from computers often requires agents to seize all electronic storage devices (along with peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, CD-Roms, DVDs) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store data in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of the crime. This sorting process can take weeks or months, depending on the volume of data stored and it would be impractical to attempt to search for this kind of data on site.

b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is oftentimes difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden", erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the

system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

VII. PROBABLE CAUSE

12. On October 25, 2007, I received information from a confidential informant ("CI"), who has provided me with reliable and verified information in the past regarding various violations of law. The CI has received immigration benefits in the form of a Significant Public Benefit Parole in exchange for this assistance, allowing the CI to remain in the United States.[1]

13. The CI told me that Maria Victoria HOFFMANN currently possesses various FRNs, which she is attempting to sell to individuals in the Los Angeles, California area. The CI also told me that HOFFMANN uses the following two email addresses: eastwind1004@yahoo.com and eastwindcode@hotmail.com.

14. On October 29, 2007, I, acting in an undercover capacity as "Gabe Zerai," sent an email to HOFFMANN at eastwind1004@yahoo.com and eastwindcode@hotmail.com. I sent the email from an account registered to me as Gabe Zerai, zeraiconsulting@yahoo.com (the "Gabe Zerai email account"). In the email, I introduced myself as a financial consultant in Los Angeles, specializing in deals involving historic or large-value

[1] The CI was previously convicted of Grand Theft of Property and False/Fraudulent Insurance Claims, in violation of California Penal Code Section 487. The convictions were later set aside and dismissed per California Penal Code Sections 1203.4 and 1203.4A.

financial instruments, including FRNs. I said that I had become aware that HOFFMANN currently had some FRNs and was looking for a buyer. I offered my services in finding a buyer or investor for her FRNs, and asked her to provide me with further details about the FRNs.

15. On October 30, 2007, I received an email from HOFFMANN, sent to the Gabe Zerai email account from eastwind1004@yahoo.com. In the email, HOFFMANN expressed interest in a transaction, and asked to speak by phone. She provided her telephone number as 972-904-4643.

16. On November 1, 2007, I, acting in an undercover capacity as Gabe Zerai, made a telephone call to HOFFMANN at 972-904-4643. The call was recorded. In the course of the telephone call, HOFFMANN identified herself and stated that she wanted to meet with me in Los Angeles, to provide documents and photographs regarding her FRNs. She further stated that she had other individuals interested in the FRNs and had been dealing with the "feds," but would now only be dealing with me. She stated that she wanted me to look for a private buyer and was hoping that the deal could be completed by Christmas.

17. On November 2, 2007, I, again acting in an undercover capacity as Gabe Zerai, received a telephone call from telephone number 858-271-4941, from an individual who identified himself as Renato. The call was not recorded, as it was an incoming and

unanticipated call. I later determined that the caller was GAZA. In the course of the conversation, GAZA stated that he was a trustee assisting HOFFMANN with her FRN deal. He asked me if I was familiar with dealing with FRNs, noting that FRNs were a sensitive item to deal with in the U.S. I assured him that I had dealt with FRNs in the past and was familiar with how they must be dealt with. He told me that he would email me further details regarding HOFFMANN's FRNs.

18. On November 1, 2007, I received another email message from HOFFMANN, sent to the Gabe Zerai email account. In the email, HOFFMANN sought a meeting with me in Los Angeles, and said she would be sending documents regarding the FRNs that evening. She indicated that the notes were in Zurich, Switzerland.

19. On November 3, 2007, I, acting in an undercover capacity as Gabe Zerai, sent an email to HOFFMANN in which I stated that I had spoken to her trustee (GAZA) the previous night and we both thought we would be able to complete a transaction for her notes. I invited her to contact me the next time she was in LA so that we could discuss the transaction further and said I looked forward to receiving documentation about the notes so that I could begin locating buyers.

20. On November 3, 2007, I received an email message to the Gabe Zerai email account from GAZA at email address

rengaza@aol.com. The body of the email said simply, "Regards, Renato Gaza 858-271-4941" and it had several attachments regarding the FRNs possessed by HOFFMANN, including a description of the instruments listing their denominations as "One Billion" and "One Hundred Million." As noted above, I know these are fictitious instruments because the United States Treasury has never issued instruments in these denominations.

21. On November 6, 2007, I received an email message from HOFFMANN to the Gabe Zerai email account. In the email, HOFFMANN said that she would send me the documents about the notes "asap" and hoped we could conclude the transaction by the end of the year.

22. On November 6, 2007, I, acting in an undercover capacity as Gabe Zerai, sent an email to HOFFMANN providing my office address as 214 Main Street, Suite 5, El Segundo, CA. (The address is actually a UPS store, containing various postal boxes for rent.)

23. On November 8, 2007, I contacted the manager of the UPS Store at 214 Main Street, El Segundo, California, and determined that a package with Gabe Zerai listed as the addressee had been sent to that address. I took custody of the sealed package from the UPS Store and transported it to my office in El Segundo, California. My review of the contents of the package revealed that it contained the following:

a. A handwritten note stating, "Dear Gabe, enclosed are the complete documents of the FRN..." The note also stated that HOFFMANN also uses the last name of Colvil, which was her late husband's last name;

b. A document entitled "Affidavit" in which HOFFMANN states that she is the holder of two boxes containing "historical notes" from 1934;

c. A document entitled "Beneficial Custodial Ownership Declaration" in which HOFFMANN states that the two boxes she possesses contain "treasury Bond Security value 1934 series $USD or/and other USA securities" with a total combined value of $275,000,000,000 USD (two hundred and seventy-five billion). The document further states, "these assets are good and clean of non-criminal origin." The document also listed HOFFMANN'S address as 1705 Coit Road, #2045, Plano, TX 75075;

d. Two documents indicating that the two boxes are currently being held in Zurich, Switzerland;

e. Four photographs of the two boxes possessed by HOFFMANN. The words "United States of America Federal Reserve" appear on both boxes along with what appear to be U.S. Government seals; and

f. A photocopy of a Republic of the Philippines passport, bearing the name of Maria Victoria HOFFMANN.

24. I know from my training and experience that the types of documents sent by HOFFMANN would be used for the sale, offering, or brokering of fictitious instruments. Based on my training and experience, I also know that the notes referenced by HOFFMANN in these documents are fictitious.

25. On November 27, 2007, Los Angeles Superior Court Judge Robert O'Neill signed and approved three search warrants for the email accounts used by HOFFMANN and GAZA, eastwindcode@hotmail.com, eastwind1004@yahoo.com, and rengaza@aol.com, for evidence related to violations of sections 470 and 475 of the California Penal Code, relating to fictitious instruments.

26. On December 27, 2007, I reviewed items obtained during the execution of the search warrant, in the form of compact discs and miscellaneous paper documents provided by MSN Hotmail, Yahoo, and AOL. My review of the content of the compact discs and paper documents revealed the following:

a. The subscriber of email account rengaza@aol.com was listed as R Gaza, P.O. Box 881653, San Diego, CA. (Note: On December 28, 2007, I conducted queries of law enforcement databases for information about GAZA. Those queries revealed that GAZA had a California driver's license, number N2375472, and that he had a mailing address of PO Box 881653 San Diego and

a residential address of 10321 Camino Ruiz, Number 18, San Diego, California, 92126).

b. The subscriber of email account eastwind1004@yahoo.com was listed as Ms M V Hoffmann, in Dallas, Texas. The account also listed an alternate email address for the subscriber as eastwindcode@hotmail.com.

c. The subscriber of email account eastwindcode@hotmail.com was listed as V. HOFFMANN in Texas.

d. Among the items contained in the searched accounts was an email sent from rickytickytick@yahoo.com on November 28, 2007 to eastwind1004@yahoo.com. From the context of the message, I believe this email was from a social acquaintance of HOFFMANN who was aware of her attempts to sell her FRNs. In the email, the writer suggested that HOFFMANN authorize the writer to make direct contact with the Federal Reserve/Treasury Department to try to negotiate a sale price for HOFFMANN's notes. The writer noted that if the notes were legal and legitimate, it did not make sense to go through brokers. Based on my training and experience, I believe this email suggests that HOFFMANN was aware that legitimate instruments would not sensibly be handled by brokers, as contemplated in HOFFMANN's discussions with me, and therefore that her attempts to sell the FRNs to non-government persons indicate her intent to defraud.

27. On December 20, 2007, I received an email message from GAZA to the Gabe Zerai email account. That email contained information about another set of FRN's available "from a long time source" of GAZA's (not HOFFMANN). Attached to the email were scanned images of various documents, including a document purporting to be an FRN with a face value of $500,000,000 (five hundred million). The FRN stated on its face, "This note is legal tender for all debits public and private." It also stated, "United States of America will pay to the bearer on demand five hundred million dollars." Also attached to the email was a document stating that Darrell Lee JOHNSON, of the law office of Darrell Lee Johnson, was acting as the custodian of the FRNs. The document further stated that there was a total of five hundred of the FRNs.

28. On January 8, 2008, I, acting in an undercover capacity as Gabe Zerai, made a telephone call to GAZA. The call was recorded. In the course of the conversation, I informed GAZA that I had located potential buyers for the FRNs belonging to HOFFMANN. I further stated that the FRNs would have to be brought to the U.S. to complete the sale. GAZA reiterated his previous statements to me that FRNs are very sensitive items. GAZA and I discussed the fact that if the FRNs were found by U.S. law enforcement they would be seized. GAZA and I also specifically discussed the fact that if, in the course of

attempting to ship or bring the FRNs into the U.S., U.S. Customs discovered the FRNs, they would also be seized. I informed GAZA that I had an associate who was an employee of DHL shipping company, who could facilitate the smuggling of the FRNs into the U.S. Specifically, I informed GAZA that my DHL associate could insure that the FRNs would not be inspected by U.S. Customs. GAZA was receptive to having the FRNs smuggled into the U.S. by my DHL associate. I told GAZA that I would confirm the details with my DHL associate and provide GAZA with further information. I also told GAZA that I would call HOFFMANN and provide her with the same information.

29. Also on January 8, 2008, after having the above conversation with GAZA, I, again acting in an undercover capacity as Gabe Zeria, made a telephone call to HOFFMANN. The call was recorded. In the course of the conversation, I informed HOFFMANN that I had located potential buyers for her FRNs. I also informed her that the FRNs would have to be brought to the U.S. to complete the sale. HOFFMANN stated that all the FRNs that people have previously attempted to bring into the U.S. have been confiscated. I informed HOFFMANN that I had an associate who was an employee of DHL shipping company, who could facilitate the smuggling of the FRNs into the U.S. Specifically, I informed HOFFMANN that my DHL associate could ensure that the FRNs would not be inspected. In the course of

the discussion, HOFFMANN was receptive to having the FRNs smuggled into the U.S. by my DHL associate and stated that she wanted to continue with the deal. I told HOFFMANN that I would confirm the details with my DHL associate and provide HOFFMANN with further information.

30. On January 14, 2008, acting in an undercover capacity as Gabe Zeria, I sent an email to both GAZA and HOFFMANN. In the email, I explained that the clients I had lined up as potential buyers would not complete a transaction without seeing the FRNs, and would not travel to a foreign country just to see them. Therefore, the notes needed to be brought to the U.S. I reiterated that my associate at DHL could make sure that the FRNs would not be examined by customs, so there would be no chance that the notes would be seized. I noted that I and my associates would cover the "fee" for having the DHL contact perform this service, and that we had successfully done this in the past. I asked HOFFMANN and GAZA to let me know when they could go to Switzerland and retrieve the FRNs from the facility in which they were stored so that I could let the buyer/investor know. I added, "Let's move this forward and make some money."

31. On January 18, 2008, I, acting in an undercover capacity as Gabe Zeria, had a telephone conversation with GAZA. The call was recorded. In the course of the conversation GAZA said again that FRNs are very sensitive items and that he is

aware that if the U.S. government discovers FRNs, they will be seized. GAZA further stated that he had previously been arrested by the FBI in the course of a sting for attempting to sell FRNs. GAZA said that he was going to telephonically connect me to an individual to discuss the FRNs described in the emails GAZA sent me on December 20, 2007, i.e., the ones for which JOHNSON was acting as custodian.

32. GAZA then telephonically connected me to an individual who identified himself as Grant Kime ("Kime"). The call continued to be recorded. In the course of the conversation, Kime informed me that he wanted to speak to me regarding the FRNs about which GAZA had provided me information. Kime said that the FRNs were currently stored at the holder's (by which I understood him to mean JOHNSON's) office near downtown Los Angeles, California and that the holder of the FRNs (i.e., JOHNSON) would be interested in meeting with me to discuss trying to find a buyer for the FRNs. I told Kime that I could assist in finding a buyer or investor for the FRNs.

33. On January 22, 2008, I conducted queries of law enforcement and various open source Internet databases for information regarding JOHNSON, and the Law office of Darrell Lee Johnson, where the previous emails had stated the FRNs were being kept. Those queries revealed the following:

a. JOHNSON maintained an office at an office building located at 3580 Wilshire Blvd., Los Angeles, California.

34. Also on January 22, 2008, I contacted the property manager for 3580 Wilshire Blvd, who stated that JOHNSON was the current occupant of 3580 Wilshire Blvd, Suite 1506, Los Angeles, California 90010.

35. On January 24, 2008, Los Angeles Superior Court Judge Nancy Newman signed and approved a search warrant for the search of 3580 Wilshire Blvd, Suite 1506, Los Angeles, California 90010, for evidence related to violations of sections 470, 745, and 476 of the California Penal Code, relating to fictitious instruments.

36. Also on January 24, 2008, I and other ICE SAs served the search warrant on 3580 Wilshire Blvd, Suite 1506, Los Angeles, California and conducted a thorough search of the premises for the items listed in the warrant. (Standard ICE procedures were employed to avoid review of any potentially privileged material.) In the course of the search, the following items were found:

a. Two color copies of FRNs, which purported on their faces to be "Federal Reserve Notes" with face values of $100,000,000 (one hundred million). The FRNs stated on their faces, "This note is legal tender for all debts, public and

private" and, "The United States of America will pay to the Bearer on Demand One Hundred Million Dollars."

b. Three color copies of fictitious currency items, which purported on their faces to be "Federal Reserve Bonds" with face values of $100,000,000 (one hundred million). The items also stated on their faces, "This note is legal tender for all debts, public and private and is redeemable in lawful money at the United States Treasury or at any Federal Reserve Bank."

c. A three-page document printed from the U.S. Treasury website entitled "Examples of Known Phony Securities." The document, subtitled "Fraudulent Federal Notes or Bonds," included the following statements: "We have received hundreds of contacts about these bogus securities. These federal notes are not currency, neither are they bearer bonds. They are in fact crude forgeries…these crude forgeries were likely made by inserting images of $100 dollar bills…into a computer program, then altering the amounts to read $100 million and $500 million…The Treasury Department did not issue securities (bonds) in $100 million or $500 million denominations during the time period alleged in this fraud."

37. After completing the search, I left a copy of the search warrant and my telephone number at the premises.

38. On January 28, 2008, JOHNSON contacted me to request information regarding the search warrant served at his office.

In the course of that conversation, I told JOHNSON that the FRNs that we were aware he possessed were fictitious instruments. I further told JOHNSON that because the FRNs were fictitious instruments, they must be turned over to the U.S. government to prevent persons from being defrauded. JOHNSON acknowledged that he was aware of the existence of the FRNs, but stated that he was not in possession of the FRNs and did not know exactly where they were located.

39. On January 29, 2008, I, acting in an undercover capacity as Gabe Zerai, sent an email to HOFFMANN and GAZA. In the email, I said that I had had a breakthrough with one of the potential buyers in Los Angeles, and they agreed to pay the fees necessary to retrieve HOFFMANN's FRNs from the storage facility in Switzerland at which they were being kept. I noted that the buyers would obviously need to view the FRNs before they bought them and would go to Zurich to do so.

40. On February 2, 2008, I received an email message to the Gabe Zerai email account from HOFFMANN. In the email, HOFFMANN asked me to let her know when the buyers would go to Zurich, so that we could finish the transaction as soon as possible.

41. I have not had subsequent communication with HOFFMANN, and believe that she is waiting for me to contact her regarding

having my purported buyers go to Switzerland to review the instruments she is offering to sell.

42. On February 7, 2008, I, acting in an undercover capacity as Gabe Zerai, made another telephone call to GAZA. The call was recorded. During the conversation, GAZA confirmed that JOHNSON was the holder of the FRNs about which he had sent me information on December 20, 2007. GAZA informed me that he and Kime still wanted to meet with me to discuss attempting to sell the FRNs possessed by JOHNSON.

43. Also on February 7, 2008, I, again acting in an undercover capacity as Gabe Zerai, made a telephone call to Kime. The call was recorded. During the conversation, Kime stated that he and the holder (i.e. JOHNSON) of the FRNs would like to meet with me in Los Angeles to further discuss the sale of the FRNs. I agreed to meet with him, GAZA, and JOHNSON at 6:00 p.m. on February 15, 2008.

44. Based on my training and experience I deduce that because I have been told JOHNSON possesses the fictitious obligations, but they were not located at his office, they are currently held at his residence.

45. On February 8, 2008, I conducted additional queries of law enforcement and open source databases regarding JOHNSON. Those queries revealed the following: JOHNSON has a California driver's license, number H0765214, a mailing address of 3580

Wilshire Blvd, Suite 1400, Los Angeles, California, and another address of 2200 El Molino Place, San Marino, California, i.e., the SUBJECT PREMISES.

46. On February 11, 2008, I was contacted by ICE Task Force Officer (TFO) Scott O'Connor, who informed me that on February 8, 2008, he had conducted surveillance of 2200 El Molino Place, San Marino, California, i.e., the SUBJECT PREMISES. TFO O'Connor told me that his surveillance showed that a 1995 Mercedes bearing California license plate 3RFM166, was parked in the garage of 2200 El Molino Place, San Marino, California.

47. TFO O'Connor also informed me that a query of a law enforcement database revealed that the registered owner of the vehicle was D L Johnson, with a listed address of 3580 Wilshire Blvd, Suite 1700, Los Angeles, California.

VIII. CONCLUSION

48. Based on the foregoing information, and on my training and experience, there is probable cause to believe that evidence designed for use or used in committing violations of Title 18, United States Code, Section 514 (Fictitious Obligations)may be found at GAZA's residence of 10321 Camino Ruiz, Apartment 18, San Diego, CA, 92126.

JASON DUNHAM
SPECIAL AGENT
U.S. Immigration and Customs Enforcement

Subscribed and sworn to before me on this 15th day of February 2008.

HONORABLE ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

10321 Camino Ruiz, Apartment 18, San Diego, California, 92126, ("THE SUBJECT PREMISES.") The Subject Premises is a residential apartment located in an apartment building at 10321 Camino Ruiz, San Diego, California. The apartment building is located on the East side of Camino Ruiz. The apartment building is the second building North of the intersection of Camino Ruiz and Gold Coast Drive. The exterior of the apartment building is white stucco with a red and orange ceramic tile roof. The apartment building is a two-story building. The numbers "10321" appear on the West side of the building. Apartment 18 is further described as being located on the second floor of the building in the North East corner of the building. The front door to apartment 18 is located on the East side of the apartment facing East. Immediately North of the front door on the same wall is a window for apartment 18. The numbers "18" appear next to the front door of apartment 18.

# ATTACHMENT B

## I. Items To Be Seized

The items to be seized are evidence of violations of Title 18, United States Code, Section 514, regarding fictitious obligations, specifically:

a. Any and all fictitious obligations, to include those securities alleging to be "Federal Reserve Notes" in denominations exceeding $100,000, and copies or partial copies of the same;

b. Telephone records, including records of outgoing and incoming calls;

c. Photographs depicting fictitious instruments or depicting GAZA or HOFFMANN; and

d. Any and all records, correspondence, address books, agreements, documents or materials relating to the passing, uttering, offering, brokering, or selling of fictitious obligations.

e. As used above, the terms records, correspondence, address books, agreements, documents or materials include records, correspondence, address books, agreements, documents or materials created, modified or stored in any form.

f. Searching for computerized information for evidence or instrumentalities of crime commonly requires agents to seize all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment because:

i. The peripheral devices, which allow users to enter or retrieve data from the storage devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output (I/O) devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it operated at the time of the seizure in order to accurately retrieve the evidence listed in this affidavit. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers), as well as all related instruction manuals or other documentation and data security devices. If the analyst determines that the I/O devices, software, documentation, data security devices are not necessary to retrieve and preserve the data after inspection, the government will return them in a reasonable time.

ii. In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices as well as central processing units (CPUs). Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

iii. In addition, there is probable cause in this matter to believe that the computers and associated storage devices, monitors, keyboards, modems and other peripherals including scanners and printers located at 10321 Camino Ruiz, Apartment 18, San Diego, California,

92126, are all being used as instrumentalities of the crime of Fraud and Related Activity in Connection with Identification Documents and Information and Fraud and Misuse of Visas, Permits and other Documents in violation of law, and should all be seized as such.

iv. Based upon the foregoing paragraphs, judicial authority is specifically requested to search the premises located at 10321 Camino Ruiz, Apartment 18, San Diego, California, 92126, and seize the computer equipment, associated storage devices, monitors, keyboards, modems and other peripherals including scanners and printers, and other evidence, and to permit the search of all seized computer equipment, and associated devices that may store data by a qualified computer expert in a laboratory or other controlled environment.